UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

GREGORY PERRY,

   Petitioner,

v.

UNITED STATES OF AMERICA,

   Respondent.

Civ. No. 16-186 (KM)

**OPINION**

## KEVIN MCNULTY, U.S.D.J.

### I. INTRODUCTION

The petitioner, Gregory Perry, is a federal prisoner proceeding pro se with a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. Mr. Perry has also filed a motion for an evidentiary hearing and a motion for pro bono counsel. For the following reasons, Mr. Perry's § 2255 motion will be denied, as will his motion for an evidentiary hearing and his motion for pro bono counsel.

### II. BACKGROUND

#### A. The Underlying Criminal Proceeding

The Court of Appeals for the Third Circuit succinctly described the underlying circumstances as follows:

> In May 2008 law enforcement officers determined that Perry was a suspect in a string of burglaries. On June 10, 2008, officers observed Perry make furtive movements as he entered a vehicle. The officers stopped him and he informed them that there was marijuana in the vehicle. A search of Perry's vehicle revealed, among other things, a loaded 9 mm handgun, heroin, marijuana, and burglar's tools.

*United States v. Perry*, 460 F. App'x 149, 151 (3d Cir. 2012).

More specifically, on June 10, 2008, Detective James McMorrow and Detective Sergeant Chris Stefanacci of the Bergen County Prosecutor's Office were conducting surveillance of Mr. Perry as part of an ongoing investigation into numerous burglaries that had been committed in the Englewood, New Jersey area. (DE 7-5, Ex. D, at 1.)[1] The detectives saw Mr. Perry approach a vehicle where he "remove[d] an item from his waistband area and place[d] it in the rear of the vehicle." (*Id.* at 2.) Mr. Perry drove away, and the detectives followed. (*Id.*) The detectives later effectuated a traffic stop of Mr. Perry based on the knowledge that he was driving on a suspended license, and the suspicion that he possessed a handgun. (*Id.*) Approaching the vehicle, the detectives identified themselves as law enforcement, instructed Mr. Perry to get out of the vehicle, and performed a pat down. (*Id.*) The detectives read Mr. Perry his *Miranda* rights, explained that he was stopped due to his suspended license and informed him that he was a suspect in a burglary investigation. (*Id.*)

The detectives then asked Mr. Perry what he had placed in the rear of his vehicle, to which he responded that "the only thing in that car is a bag of dope in the front." (*Id.*) Detective McMorrow understood "dope" to refer to heroin and asked if he could enter the vehicle to retrieve the substance. (*Id.*) Mr. Perry first consented to a search of the vehicle, but then refused to sign the consent to search form. (*Id.*) Mr. Perry was then placed under arrest for possession of narcotics and taken to the Paramus office of the Bergen County Prosecutor's Office. (*Id.*)

Following the arrest, a warrant was obtained to search Mr. Perry's vehicle. (DE 7-3 & 7-4, Exs. B, C). The search of Mr. Perry's vehicle revealed, *inter alia*, substances suspected to be marijuana and heroin and a loaded handgun inside a backpack in the rear of the vehicle. (DE 7-6,

---

[1] DE __, unless otherwise specified, refers to docket entries in this § 2255 matter. Entries in the underlying criminal case are designated Crim. No. 09-80, DE __

2

Ex. E, at 2.)

In February 2009, Mr. Perry was charged in a one-count indictment of felony possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). *United States v. Perry*, Crim. No. 09-80, DE 1. On May 25, 2010, Mr. Perry pled guilty pursuant to a plea agreement. Crim. No. 09-80, DE 19. On November 23, 2010, Judge Dennis M. Cavanaugh sentenced Mr. Perry to a ninety-month term of imprisonment. Crim. No. 09-80, DE 24.

Mr. Perry timely filed an appeal of his sentence, arguing that Judge Cavanaugh abused his discretion in granting the Government's request for a significant upward departure based on Mr. Perry's criminal history. Crim. No. 09-80, DE 25. On February 1, 2012, the Third Circuit affirmed the judgment of the District Court. *Perry*, 460 F. App'x 149.

### B. The § 2255 Motion

On January 6, 2016, Mr. Perry, acting pro se, filed a § 2255 motion to vacate, set aside, or correct his sentence (the "petition"). (DE 1.) Judge Cavanaugh having retired, the matter was assigned to me. Mr. Perry contends that his counsel provided ineffective assistance by not filing a motion to suppress the evidence seized from his car. (*Id.* at 5.) The handgun found in his vehicle, he says, was "fruit of the poisonous tree" because there was no probable cause to arrest him. (*Id.*) Mr. Perry acknowledges that the petition was filed more than one year after his judgment of conviction became final but asserts that the one-year deadline to file his motion, *see* 28 U.S.C. § 2255(f)(1), should be relaxed because he was not timely informed of the Third Circuit's decision affirming his conviction on direct appeal (a key event in starting the running of the one-year limitations period). (DE 1-1, ¶¶ 9–10.)

In opposition to the petition, the United States argues that Mr. Perry's motion is barred by the limitations period for § 2255 motions and that he has failed to demonstrate any reason why

3

that deadline should be equitably tolled. (DE 7, at 6–9.) Even if his motion were to be deemed timely, the United States argues, he has failed to show that counsel's performance was deficient or that Mr. Perry suffered any prejudice as a result. (*Id.* at 10–15.) Specifically, the government contends that there was no legal or factual basis on which to argue that the evidence should be suppressed. (*Id.* at 13–14.) Relatedly, there was no prejudice because a motion, if it had been filed, surely would have been denied on the merits. (*Id.* at 15.)

In addition to the § 2255 petition, Mr. Perry has also filed a motion to appoint pro bono counsel (DE 6), and a motion to conduct an evidentiary hearing, (DE 8). In his motion for an evidentiary hearing, Mr. Perry responds to Respondent's assertion that the petition is untimely. (DE 8-1, ¶¶ 2–5.) Mr. Perry argues that the Clerk of the Third Circuit's failure to timely alert him of the affirmance of his conviction is an extraordinary circumstance that warrants equitable tolling of the time limitation for the filing of a § 2255 motion. (*Id.*; DE 12, at 2–3.)

Mr. Perry further argues that an evidentiary hearing should be conducted because his petition presents a mixed question of fact and law. (DE 8-1, ¶¶ 7–8.) In that motion, Mr. Perry asserts a supplemental ground for relief: from the inception of the traffic stop, he says, the officers brandished their weapons, placing him under a *de facto* arrest. (DE 12, at 3–4). Respondent replies that this additional claim is both untimely and procedurally improper because it was not raised in the initial petition. (DE 11, at 6.) Respondent asserts that Mr. Perry is not entitled to an evidentiary hearing because his claims lack merit and do not meet the *Strickland* standard for ineffective assistance of counsel. (DE 11, at 9–12.)

### III. LEGAL STANDARD

To grant relief on a federal prisoner's motion to vacate, set aside or correct a sentence under 28 U.S.C. § 2255, the Court must find that "there has been such a denial or infringement of

4

the constitutional rights of the prisoner as to render judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b). "In considering a motion to vacate a defendant's sentence, 'the court must accept the truth of the movant's factual allegations unless they are clearly frivolous based on the existing record.'" *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005) (quoting *Gov't of V.I. v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989)). A district court "is required to hold an evidentiary hearing 'unless the motion and files and records of the case show conclusively that the movant is not entitled to relief.'" *Id.* (quoting *Forte*, 865 F.2d at 62).

I interpret Mr. Perry's contentions as components of an overall claim of ineffective assistance of trial counsel. The Sixth Amendment guarantees defendants effective assistance of counsel during critical portions of a criminal proceeding. *See Lafler v. Cooper*, 566 U.S. 156, 165 (2012). The Supreme Court, in *Strickland v. Washington*, 466 U.S. 668 (1984), articulated a two-prong burden for demonstrating the ineffectiveness of counsel: (1) that, considering all relevant circumstances, counsel's performance fell below an objective standard of reasonableness and (2) that the petitioner suffered prejudice as a result. *Id.* at 687–96; *see also Grant v. Lockett*, 709 F.3d 224, 232 (3d Cir. 2013).

In addressing the first prong, the petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Judicial scrutiny of counsel's conduct must be "highly deferential." *See id.* at 689. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. The reviewing court must make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Counsel's strategic choices made after thorough

investigation of the relevant law and facts are "virtually unchallengeable," while choices made with less than entirely thorough investigation "are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690–91; *see also Rolan v. Vaughn*, 445 F.3d 671, 682 (3d Cir. 2006); *Gov't of V.I. v. Weatherwax*, 77 F.3d 1425, 1432 (3d Cir. 1996). Whether counsel acted in a manner that was deficient is measured by a standard of "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 687–88; *see also Wiggins v. Smith*, 539 U.S. 510, 521 (2003).

The second prong of the *Strickland* test requires the petitioner to affirmatively prove resulting prejudice. *See* 466 U.S at 693. Prejudice is generally found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*; *see also McBride v. Superintendent, SCI Houtzdale*, 687 F.3d 92, 102 n.11 (3d Cir. 2012). "This does not require that counsel's actions more likely than not altered the outcome, but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case. The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 111–12 (2011) (internal quotation marks and citation omitted).

*Strickland* made it clear that a court may apply the two prongs in whichever order it sees fit. 466 U.S. at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."); *see also Rainey v. Varner*, 603 F.3d 189, 201 (3d Cir. 2010).

6

## IV. DISCUSSION

### A. Timeliness

Under 28 U.S.C. § 2255(f)(1), a § 2255 motion must be filed within one year after the judgment of conviction becomes final. A judgment of conviction becomes final on the later of "(1) the date on which the Supreme Court affirms the conviction and sentence on the merits or denies the defendant's timely filed petition for certiorari, or (2) the date on which the defendant's time for filing a timely petition for certiorari review expires." *Kapral v. United States*, 166 F.3d 565, 577 (3d Cir. 1999). The Third Circuit entered its decision affirming the judgment of conviction on February 1, 2012. *Perry*, 460 F. App'x 149. Because Mr. Perry did not petition the Supreme Court for certiorari, the judgment of conviction became final on May 1, 2012, ninety days after the Third Circuit issued its ruling. *Kapral*, 166 F.3d at 577; U.S. Supreme Court Rule 13. Mr. Perry did not file this petition until January 6, 2016. Accordingly, unless the limitations period is tolled, his petition is time-barred.

The limitations period for the filing of a § 2255 motion may be equitably tolled in extraordinary cases. *Ross v. Varano*, 712 F.3d 784, 798–99 (3d Cir. 2013); *see also Miller v. N.J. State Dep't of Corrs.*, 145 F.3d 616, 619 n.1 (3d Cir. 1998). The Supreme Court has explained that "[g]enerally, a litigant seeking equitable tolling [of the AEDPA's one-year statute of limitations] bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Ross*, 712 F.3d at 798 (alterations in original) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). In considering these factors, the Court must "exercise judgment in light of prior precedent, but with awareness of the fact that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case." *Id.* at 799 (quoting *Holland v. Florida*, 560 U.S. 631,

7

650 (2010)). That said, the doctrine is to be sparingly applied. *Id.*

Mr. Perry argues that the limitations period should be equitably tolled because he did not learn of the Third Circuit's decision affirming his conviction on direct appeal until December 23, 2015, nearly four years after it was rendered. This delay would not support equitable tolling, both because Mr. Perry has not demonstrated that he exercised reasonable diligence, and because it does not constitute an extraordinary circumstance.

*First*, Mr. Perry has not demonstrated that he exercised reasonable diligence in pursuing his rights. *See id.* ("The diligence required for equitable tolling purposes is reasonable diligence, not maximum, extreme, or exceptional diligence."). As noted, Mr. Perry acknowledges that some three years and ten months elapsed before he learned of the Third Circuit affirmance.

Before the Third Circuit, Mr. Perry was initially represented by counsel, but Perry sought and was granted leave to proceed pro se. (DE 7-16) Mr. Perry's address of record on appeal, as he acknowledges, was the Morris County Correctional Facility. The Third Circuit Opinion was mailed to him there, at the Morris facility, on February 1, 2012, the date it was rendered. (DE 1-1 ¶ 8; DE 1-2 at 15.) Perry states that he was transferred between institutions, however, and that by the time the panel issued its opinion, he was housed at the Essex County Correctional Facility. (*Id.*) Mr. Perry blames the transfers for his failure to receive notification of the Third Circuit's decision. Indeed, there was a further transfer; at the time he received a copy of the Third Circuit's decision on December 23, 2015, he was confined at the Northern State Correctional facility. He does not state precisely how he received the documents, however, or explain why he could not have received them by the same means at some earlier time. (DE 1-1 ¶ 9)[2]

---

[2] It appears from the envelope, however, that the Clerk for the Court of Appeals mailed the documents to Northern State Prison on December 18, 2015. (DE 1-2 at 13–14) The mailing of a four-

8

Mr. Perry does not contend that he ever provided the Clerk of the Court with an updated address. (*Id.*) Rather, he cites Fed. R. App. P. 36(b), which requires the Clerk to serve on all parties a copy of the court's opinion on the date it is entered. Contrary to Mr. Perry's argument, that Rule does not obligate the clerk to perform independent research in each case to ascertain whether the address of record supplied by a party is accurate. Indeed, no such rule would be practicable.[3] Having elected to proceed *pro se,* Mr. Perry took on the burden of informing the Court of his current contact information. His failure to update his mailing address upon being transferred to a different facility demonstrates that he did not exercise reasonable diligence to ensure that he received notice of the Third Circuit's decision by mail.

Mr. Perry alleges that he sent numerous letters to the Third Circuit requesting a status update on his appeal, but that those letters went unanswered. The appellate docket does not indicate that any such letters were received by the Court. (*See* DE 7, Ex. L.) Nor does Mr. Perry explain why, if his letters were not received or answered, he reasonably "presumed" (DE 1-1 ¶ 9) for nearly four years that no decision had been rendered.

I note, by the way, that the Clerk is also obligated to post all opinions on the court's internet web site. (3d Cir. Local R. 36.1.) I located the opinion easily on the web site, without using legal research tools. http://www2.ca3.uscourts.gov/opinarch/104598np.pdf. Mr. Perry does not allege that he pursued this alternative avenue when his letters allegedly went unanswered.

---

year-old decision to a particular prison surely must have occurred in response to a request by the defendant or someone acting on his behalf. The record, however, is silent.

[3] Mr. Perry's argues that Federal Rule of Appellate Procedure 36(b) requires the Clerk to "pursue available avenues to properly notify [litigants] of the Court's judgment." (DE 8-1, ¶ 4.) That additional duty is not supported by the text of the Rule, which states that "On the date when judgment is entered, the clerk must serve on all parties a copy of the opinion—or the judgment, if no opinion was written—and a notice of the date when the judgment was entered." Fed. R. App. P. 36(b). That duty is exhausted by service of the opinion on a party at its address of record.

9

*Second,* Mr. Perry's late receipt of the Third Circuit's decision does not constitute an extraordinary circumstance. Extraordinary circumstances may be found where (1) the respondent has actively misled the petitioner, (2) if the petitioner "has in some extraordinary way been prevented from asserting his rights," or (3) where the petitioner has timely asserted his right in the wrong forum. *See Fahy v. Horn,* 240 F.3d 239, 244 (3d Cir. 2001) (quoting *Jones v. Morton,* 195 F.3d 153, 159 (3d Cir. 1999)). "In non-capital cases, attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the 'extraordinary' circumstances required for equitable tolling." *Id.* The alleged delay here did not result from any extraordinary circumstance. Mr. Perry would not be entitled to the extraordinary remedy of equitable tolling.

## B. Ineffective Assistance of Counsel

In the alternative, however, I will briefly address the merits of Mr. Perry's § 2255 petition. Mr. Perry contends that his counsel was ineffective because he failed to file a motion to suppress the handgun that was found during the search of his vehicle. In his § 2255 petition, Mr. Perry asserts that his counsel should have moved to suppress the handgun because there was no probable cause to arrest him. In his motion for an evidentiary hearing, Mr. Perry contends that his counsel should have also filed a motion to suppress the handgun because officers brandished their weapons at him during the traffic stop, rendering it a *de facto* arrest.

Mr. Perry's ineffective assistance claims, if entertained here, would fail under either the deficient-performance or prejudice prong of *Strickland.* "Where a defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence

10

in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). Mr. Perry has not demonstrated that his Fourth Amendment claims are meritorious.

First, the record demonstrates that there was probable cause to arrest Mr. Perry. Under federal law,[4] "probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Dempsey v. Bucknell University*, 834 F.3d 457, 467 (3d Cir. 2016) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995)). Here, probable cause arose, at the latest, when Mr. Perry admitted (following *Miranda* warnings) that there was a "bag of dope" in his vehicle, and possibly before. Detective McMorrow validly arrested Mr. Perry for possession of a controlled substance.

At any rate, the contention that the seizure of the handgun was a fruit of the illegal arrest is not logical. The arrest was based on the officers' observations, culminating in Perry's statement that there was dope in the car. The officers did not search the car incident to the arrest, and the search did not depend on the arrest as such. When Perry refused consent, the officers

---

[4] Mr. Perry argues that because he was arrested by state law enforcement officers, New Jersey law must govern my analysis of his Fourth Amendment claims. (DE 12, at 4.) A state officer's authority to arrest is, of course, confined by state law, *see United States v. Di Re*, 332 U.S. 582, 68 S. Ct. 222 (1948), but that is not the end of the Fourth Amendment analysis. The issue typically comes up in relation to evidence seized incident to arrest, where the arrest, *per se,* is the justification for the search. Even there, however, the Fourth Amendment governs suppression issues. *See Virginia v. Moore*, 553 U.S. 164, 128 S. Ct. 1598 (2008) (evidence seized incident to arrest not suppressed, although the traffic offense was not an arrestable one under state law). At any rate, as for the *de facto* arrest, Perry points to no relevant distinction between state and federal law, and he cites both.

Generally, suppression issues in federal criminal cases hinge on "federal, rather than state law. [citations omitted]. Thus evidence obtained in accordance with federal law is admissible in federal court—even though it was obtained by state officers in violation of state law." *United States v. Rickus*, 737 F.2d 360, 363–64 (3d Cir. 1984). *See also United States v. Williams*, 570 F. App'x 137, 141–42 (3d Cir. 2014) ("We have held that evidence obtained in accordance with federal law is admissible in federal court even though it was obtained by state officers in violation of state law. [citing *Rickus, supra*]. Accordingly, the validity of the search warrant will be tested under federal law—the Fourth Amendment."). Mr. Perry's counsel would reasonably have understood that to succeed, a motion to suppress would have needed to demonstrate a violation of federal standards.

11

applied for and obtained a search warrant for the car. (DE 7-3, 7-4) That search warrant was not based on the arrest, or facts developed as a result of the arrest. Rather, the underlying affidavit recites the background investigation of residential burglaries; an informant's tip that Perry was responsible for them; Perry's criminal record of convictions for burglary and violent crimes involving firearms; the officers' observations on surveillance, described above; the traffic stop based on, *inter alia,* driving with a revoked license; and Perry's admission, in response to questioning about the item removed from his waistband, that he had placed a "bag of dope" in the car. (DE 7-3) The application for the search warrant which yielded the gun rested on those facts. In no way did it depend on any facts developed as a result of, or even after, the arrest. For example, Mr. Perry declined to give any statement when interrogated at headquarters. (DE 7-5)

Mr. Perry's second, "*de facto* arrest" argument also fails. In his reply papers on his motion for an evidentiary hearing, Mr. Perry alleges for the first time that early in the traffic stop, officers brandished their weapons, turning the stop into a *de facto* arrest.

An investigative stop may constitute (or ripen into) a *de facto* arrest where the "circumstances . . . amount to a show of official authority such that 'a reasonable person would have believed he was not free to leave.'" *Florida v. Royer*, 460 U.S. 491, 502 (1985); *see also United States v. De Castro*, 905 F.3d 676, 678–80 (3d Cir. 2018). "Factors tending to indicate a seizure include 'the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.'" *De Castro,* 905 F.3d at 679 (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)).

The brandishing of weapons, without more, is not sufficient to transform a stop into a *de facto* arrest. "There is no per se rule that pointing guns at people . . . constitutes an arrest." *Baker*

12

*v. Monroe Twp.*, 50 F.3d 1186, 1193 (3d Cir. 1995); *see also United States v. Edwards*, 53 F.3d 616, 619 (3d Cir. 1995) (collecting cases). Still, the "use of guns . . . must be justified by the circumstances." *Baker*, 50 F.3d at 1193.

I will assume the correctness of Mr. Perry's allegation that officers brandished their weapons during the traffic stop. I nevertheless decline to find that his counsel was deficient in not raising this argument at a suppression hearing. When the officers made the traffic stop, Mr. Perry was a suspect in a string of robberies, and was currently on bail for charges of carjacking, escape, and assault on a police officer. (DE 7-5)[5] They had seen him remove something from his waistband and place it in the car, an object which they could reasonably have feared to be a handgun. Assuming the officers did unholster their guns, they behaved reasonably to ensure their own safety during the traffic stop. *Accord United States v. Wilson*, Crim. No. 15-94, 2016 WL 2930509, at *4 (D.N.J. May 19, 2016) (finding officer acted reasonably where he approached defendant with his weapon drawn based on knowledge that defendant was armed with a handgun); *Canales v. Twp. of Toms River*, Civ. No. 11-3159, 2014 WL 683991, at *24 (D.N.J. Feb. 20, 2014) (finding use of guns by officers was reasonable where vehicle stop was conducted as part of an investigation for an armed suspect). In the course of that stop, after *Miranda* warnings, Perry made the "bag of dope" statement that was the final link in the probable cause showing that resulted in the issuance of the search warrant. The traffic stop was clearly valid, and would not have been rendered invalid by the detectives' justified caution. Because Mr. Perry cannot show that he would have succeeded in suppressing the handgun under this theory, he cannot show that his counsel was deficient by not raising it at a suppression motion.

---

[5] The officers were aware that Mr. Perry had a history of convictions for violent offenses when they applied for the search warrant. While it is likely that they also knew this at the time they performed the traffic stop, that is not explicitly stated in the arrest report. (DE 7-5)

13

Failure to raise these weak Fourth Amendment arguments (assuming they could have been raised in advance of accepting an offer to plead guilty) did not fall outside the wide boundaries of reasonable professional representation. And because it cannot be shown that they would have succeeded, prejudice has not been established. So Mr. Perry's ineffective assistance claims, even if timely, would not succeed here.

### C. Motion for Evidentiary Hearing

Mr. Perry moves separately for an evidentiary hearing because his ineffective assistance of counsel claim presents "a mixed question of law and fact." (DE 8-1, ¶¶ 7-8). An evidentiary hearing is required on § 2255 motion where "the files and records of the care are inconclusive as to whether the movant is entitled to relief." *Booth*, 432 F.3d at 546. When determining whether an evidentiary hearing is required, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *Forte*, 865 F.2d at 62. I have done so. Here, as discussed in detail above, it is clear from the existing record that Mr. Perry is not entitled to relief under § 2255. Regardless of the evidence adduced at such a proceeding, Mr. Perry would not be entitled to any relief based on the facts and law recited in his motion. *See Booth*, 432 F.3d at 545–46. Accordingly, Mr. Perry's motion for an evidentiary hearing is denied.

### D. Motion for Pro Bono Counsel

Mr. Perry has additionally moved for appointment of pro bono counsel. (DE 6.) He stresses that the equitable tolling issue in his case is novel and complex, and that he is ill-equipped to navigate the litigation process. Mr. Perry does not have a right to counsel in habeas proceedings. *See Reese v. Fulcomer*, 946 F.2d 247, 263 (3d Cir. 1991), *superseded on other grounds by statute*, 28 U.S.C. § 2254. However, 18 U.S.C. § 3006A(a)(2)(B) provides that the

court has discretion to appoint counsel where "the court determines that the interests of justice so require." In *Reese*, the Third Circuit explained that in determining whether counsel should be appointed, a court "must first decide if petitioner has presented a nonfrivolous claim and if the appointment of counsel will benefit the petitioner and the court. 946 F.2d at 263–64. "Facts influencing a court's decision include the complexity of the factual and legal issues in the case, as well as the pro se petitioner's ability to investigate the facts and present claims." *Id.*

As described above, Mr. Perry has failed to show that he has a meritorious claim under § 2255. I would add that he has been a reasonably effective advocate on his own behalf. The appointment of counsel is not warranted in this case.

### E. Certificate of Appealability

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Applying this standard, the Court finds that a certificate of appealability shall not issue in this case.

### V. CONCLUSION

For the foregoing reasons, Mr. Perry's § 2255 motion will be denied on the merits. The Court also denies Mr. Perry's motions for an evidentiary hearing and pro bono counsel. The Court declines to grant a certificate of appealability. An appropriate order will be entered.

DATED: November 28, 2018

KEVIN MCNULTY
United States District Judge

15